IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Submitted On Brief September 20, 2005 Session

## W. ROBERT VANCE, JR., ET AL. v. ROBERT C. McEWAN, M.D., ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-03-1098-3     D.J. Alissandratos, Chancellor**

———

**No. W2005-00060-COA-R3-CV - Filed December 21, 2005**

———

This case arises from lease negotiations between Plaintiff W. Robert Vance, Jr. ("Plaintiff") and Defendants, Robert C. McEwan, Dane Flippen, and Edward Caldwell ("the Defendants"). After the Defendants ultimately decided not to sign a lease with Plaintiff, Plaintiff filed suit against Defendants asserting claims for (1) breach of agreement to enter into a lease agreement; (2) breach of lease agreement; (3) detrimental reliance; (4) fraud and misrepresentation; and (5) negligent misrepresentation. After a trial on the merits, the trial court entered an order disposing of Plaintiff's contract claims. Plaintiff subsequently filed a "Motion for New Trial or, in the Alternative, to Alter or Amend Judgment and/or Make and/or to Make Additional Findings of Fact Pursuant to Tennessee Rules of Civil Procedure 59.02, 59.04, and 52.02," which the trial court denied. Plaintiff appealed. Because we find that the trial court failed to execute a final order disposing with all of Plaintiff's asserted causes of action, we dismiss this appeal for lack of subject matter jurisdiction under Rule 3(a) of the Tennessee Rules of Appellate Procedure.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Dismissed; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

John S. Golwen and Kristen Wright, Memphis, Tennessee, for the appellant, W. Robert Vance, Jr., d/b/a Moriah Properties.

Blanchard E. Tual , Eric E. Hudson, and Ben Scott, Memphis, Tennessee, for the appellees, Robert C. McEwan, M.D., Dane Flippin, M.D. and Edward Caldwell, M.D., d/b/a Park Manor Clinic, and Patrick Lloyd.

# MEMORANDUM OPINION[1]

## Factual Background and Procedural History

This case arises from a lease for space in a building owned by Plaintiff W. Robert Vance, Jr. ("Plaintiff"). Defendants, Doctors Robert C. McEwan, Dane Flippen, and Edward Caldwell (hereafter referred to as "the Defendants," or referenced by last name) leased space from Plaintiff from October 1, 2000, through September 30, 2003, for the purpose of operating a family medical practice. In the late summer of 2002, Plaintiff and the Defendants began engaging in discussions relating to the renewal of the lease and the Defendants informed Plaintiff that Patrick N. Lloyd ("Mr. Lloyd") had authority to negotiate potential new lease terms on their behalf. In a letter dated August 5, 2002, Mr. Lloyd informed Plaintiff that

> [w]hile the [Defendants] have indicated a desire to remain in their current office, there are several concerns. They are:
> - Parking
> - Access
> - Security
> - Cost per square foot
> - Area demographics
> - Condition of office
> - Space needs
>
> These items need to be addressed in short order relative to any new lease. The space cost along with some allowances for tenant improvements must become clear and be market competitive. *I am enclosing a comparison of the current space to another space of interest to the doctors.* As you can see, the landlord is making allowances for improvements here and the rental rate is lower than your rate. I would suggest that you use this to work up your proposal.

(Emphasis added).

In relation to their need for expansion, the Defendants expressed an interest in possibly acquiring additional office space on the second floor of the building. At the time of these negotiations, Memphis Counseling Center ("MCC") occupied the second floor space and had subleased a portion of it to Betty McWillie ("Ms. McWillie"), who did business under the name of "Career Directions". However, in response to the Defendants' desire to potentially expand, Plaintiff "advised [Mr.] Lloyd that he would be willing to discuss with the upstairs tenant the

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides as follows:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

possibility of vacating the space to accommodate [the Defendants]." On October 31, 2002, Mr. Lloyd confirmed to Plaintiff via letter that the Defendants were exploring the need for additional space on the second floor and further stated that "[t]he [Defendants] would be receptive to signing a 5-year lease (including additional space on the second floor) at a rental rate of $21.50 per square foot with an expense cap of $10 per square foot. In addition, they would like the improvement allowance increased to $25,000."

On November 18, 2002, Plaintiff sent the Defendants a letter informing them that MCC had preliminarily agreed to vacate 500 square feet of space on the second floor sometime in early 2003. In this same letter, Plaintiff also proposed two potential lease scenarios to the Defendants with each incorporating the upstairs space. As summarized in Plaintiff's Statement of Undisputed Facts and agreed to by the Defendants "'Scenario #1' included rent of the existing downstairs[] space at $21.50 per square foot; rent of the additional upstairs space of 500 square feet at $21.50 per square foot, improvement allowance of $25,000; and expense cap for all space for $7.00 per square foot; and, a 5-year lease term." At the time they received the November 18 letter, the Defendants had already begun looking at alternative office space located at 756 Ridgelake Boulevard. The parties dispute whether the Defendants informed Plaintiff as to their interest in this alternate office space. However, this Court does take notice of the fact that the Defendants did communicate to Plaintiff in their August 5 correspondence that they were interested in office space located elsewhere.

On December 11, 2002, Mr. Lloyd responded by letter to Plaintiff's November 18 offer and stated:

> I met with [the Defendants] on Monday to discuss your letter of November 18 regarding their lease space at 950 Mt. Moriah Rd. After discussion, [the Defendants] concluded that they would like to execute a lease based on Scenario #1 with the exception of increasing the expense cap to $10.00 [per square foot]. Given this change, they are prepared to execute a lease including the additional space for a five-year term.

Plaintiff subsequently met with Dr. McEwan on December 13, 2002, to discuss the expense cap in the proposed lease, and ultimately agreed to an expense cap of $9 per square foot. Mr. Lloyd later memorialized the agreement between Plaintiff and Dr. McEwan in a December 16, 2005, letter to Plaintiff stating: "It is my understanding after talking with Dr. McEwan that you have agreed to increase the expense cap in Scenario #1 to $9.00. As Dr. McEwan stated, this will be acceptable subject to final approval of the lease document."

Plaintiff subsequently sent Mr. Lloyd a proposed lease agreement and regulations for the Park Manor Clinic on December 23, 2002, along with a cover letter noting that the terms of the proposed lease were "as agreed to by Dr. McEwan and confirmed by [Mr. Lloyd's] letter dated December 16, 2002." Mr. Lloyd responded by sending Plaintiff a letter on December 31, 2002, requesting eight modifications to the proposed lease. On January 8, 2003, Plaintiff sent a second

draft of the proposed agreement incorporating some of Mr. Lloyd's proposed changes. After receiving no response from either Mr. Lloyd or the Defendants, Plaintiff advised the Defendants on January 15, 2003, that a lease needed to be executed promptly since the upstairs tenant, who was in the process of moving out, was expressing doubts as to her decision to give up the space.[2] On January 17, 2003, Mr. Lloyd responded with a letter stating:

> I am in receipt of your letter dated January 15 regarding the [lease for 950 Mt. Moriah Rd.]. As an update, the [Defendants] are continuing to discuss the lease and examine their options. You mentioned in your letter that the sub-tenant is expressing some doubts about giving up their space. In that event, the [Defendants] recommend that you not miss an opportunity to lease and to proceed with leasing if the opportunity exists.

> It is my estimate that the [Defendants] will conclude their due diligence soon. However, the decision has been delayed due to a new development of adding a fourth physician to the practice. I assure you that we will not prolong this.

On March 5, 2003, Plaintiff sent the Defendants a revised lease proposing new terms which were more favorable to the Defendants. Five days later, Plaintiff sent the Defendants another revised lease proposing additional favorable terms. After receiving no affirmative response from the Defendants, Plaintiff sent another revised lease on April 10, 2003, incorporating all eight changes requested by Mr. Lloyd in his December 31, 2002, letter. However, the Defendants subsequently refused to execute a new lease with Plaintiff and ultimately moved their practice in June 2003 to office space located at 756 Ridgelake Boulevard. As a result, Plaintiff filed suit against the Defendants in the Chancery Court of Shelby County on June 9, 2003, asserting causes of action for: (1) breach of agreement to enter into a lease agreement; (2) breach of lease agreement; (3) detrimental reliance; (4) fraud and misrepresentation; and (5) negligent misrepresentation.

Prior to trial, Plaintiff moved for summary judgment for all claims asserted in his complaint. The trial court denied Plaintiff's motion and the case went to trial on July 28, 2004. At trial, in an effort to streamline the issues and proof at trial, the chancellor requested that the parties advise him of all facts in dispute. The parties eventually agreed to submit the case on 21 stipulated exhibits, the parties trial briefs, and testimony concerning whether the December 13, 2002, meeting between Dr. McEwan and Plaintiff resolved all material issues regarding the formation of a lease contract. After reviewing the evidence, the chancellor issued a letter ruling on August 16, 2004, stating:

---

[2] In an Affidavit, Ms. McWillie stated that she was first approached about vacating her sub-leased office space on or about October 23, 2002. Ms. McWillie also stated that she considered her move from the upstairs space complete on December 13, 2002, when her DSL lines were moved. However, her "physical move" was not complete until sometime in January 2003. Ms. McWillie further acknowledged in her affidavit that, on January 15, 2003, she informed Plaintiff that she was questioning her decision to move out of her prior office space.

After a trial on the merits, this Court took the matter of <u>Vance v. McEwan, et al.</u> under advisement. After careful consideration and review, I find that the Plaintiff did not carry his burden of proving that the parties had a meeting of the minds on all material elements of the alleged contract.

Therefore, I render judgment in favor of the Defendants with costs assessed to the Plaintiff. The parties are advised that this letter also serves as the Chancellor's Findings of Fact and Conclusions of Law. The attorneys should present this Court with a Final Decree consistent with this letter opinion.

The trial court subsequently entered a Final Decree on September 7, 2004, stating:

THIS CAUSE came on to be heard for trial before the Court on the 28th day of July, 2004, wherein the Court took the matter under advisement. After careful consideration and review, the Court finds that the Plaintiff did not carry his burden of proving that the parties had a meeting of the minds on all material elements of the alleged contract.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that judgment is hereby rendered in favor of the Defendants with costs assessed to the Plaintiff, for which execution may issue, if necessary.

After the trial court's ruling, Plaintiff filed a Motion for New Trial or, in the Alternative, to Alter or Amend Judgment and/or to Make Additional Findings of Fact Pursuant to Tennessee Rules of Civil Procedure 59.02, 59.04, and 52.02. In this motion, Plaintiff argued that the trial court erroneously ruled on Plaintiff's contract claims and failed to address or rule on Plaintiff's other causes of action, such as detrimental reliance, fraud and misrepresentation, and negligent misrepresentation. The trial court denied Plaintiff's motion. Plaintiff appeals. Because we find that the trial court failed to enter a final decree in this matter, we dismiss this appeal for lack of subject matter jurisdiction.

**Analysis**

Although neither party in this case raises the issue of whether this Court has jurisdiction to hear this appeal, we may nonetheless consider the issue of subject matter jurisdiction pursuant to Tenn. R. App. P. 13(b), which states that "[t]he appellate court shall also consider whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review . . . ."

Rule 3 of the Tennessee Rules of Appellate Procedure provides as follows:

**(a) Availability of Appeal as of Right in Civil Actions.** In civil actions every final judgment en Supreme Court or Court of Appeals is appealable as of right. Except as otherwise permitted in

rule 9 and in Rule 54.02 Tennessee Rules of Civil Procedure, if multiple parties or multiple claims for relief are involved in an action, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all the parties.

Rule 54.02 of the Tennessee Rules of Civil Procedure deals with the entry of final judgment when multiple claims are asserted within a case, and provides as follows:

> When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the Court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties.

As recognized by the Tennessee Supreme Court in *Fox v. Fox* 657 S.W.2d 747 (Tenn. 1983),

> Rule 54.02 requires as an absolute prerequisite to an appeal the certification by the trial judge, first, that the court has directed the entry of a final judgment as to one or more but fewer than all of the claims, and, second, make an express determination that there is no just reason for delay. Such certification by the trial judge creates a final judgement appealable as of right under Rule 3 T.R.A.P. In the absence of such direction and determination by the trial judge, the order is interlocutory and can be revised at any time before the entry of judgment adjudicating all the claims and right and liabilities of all the parties.

*Id.* at 749.

In the case at bar, the record shows that Plaintiff asserted five causes of action in his initial complaint: (1) breach of agreement to enter into a lease agreement; (2) breach of lease agreement; (3) detrimental reliance; (4) fraud and misrepresentation; and (5) negligent misrepresentation. However, at the conclusion of the trial in this case, the trial court entered judgment only as to Plaintiff's contractual claims and failed to either rule on or otherwise dispose of Plaintiff's remaining three causes of action. Furthermore, the record shows that the trial judge did not certify that he was entering final judgment as to fewer than all of Plaintiff's claims and also failed to make an express determination that no just reason for delay existed for appeal upon

his ruling concerning Plaintiff's contract claims.  Therefore, since the prerequisites of neither Rule 3 of the Tennessee Rules of Civil Procedure nor Rule 54.02 of the Tennessee Rules of Appellate Procedure have been met, and since Plaintiff has not sought an interlocutory appeal as allowed for under Rule 9 of the Tennessee Rules of Appellate Procedure, we hereby dismiss Plaintiff's appeal for lack of subject matter jurisdiction.  Costs of this appeal are taxed to Appellant, W. Robert Vance, Jr., and his surety for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE